<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GIZEL VELEZ-THOMAS,

     *Plaintiff,*

  v.

UNITED STATES OF AMERICA,

     *Defendant.*

Civil No. 19-cv-6903 (KSH)(JSA)

<u>**Opinion**</u>

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.    Introduction**

On August 15, 2017, a rainy day, plaintiff Gizel Velez-Thomas went to the Union Post Office in Union, New Jersey with her cousin to mail a package after getting a manicure and pedicure. As she was walking inside, she slipped and fell. She initiated this action under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671-2680, alleging negligent maintenance, ownership, control, and operation of the post office on the part of defendant, the United States, which now moves (D.E. 36) for summary judgment in its favor.

**II.    Facts & Procedural History**

The evidence of record is gleaned from Velez-Thomas's deposition transcript (D.E. 36-2 at Ex. B, Velez-Thomas Tr.) and the declarations of Joseph Furner (D.E. 36-2 at Ex. C, Furner Decl.), Mary E. Jessup (D.E. 36-2 at Ex. D, Jessup Decl.), and Priti Patel (D.E. 36-2 at Ex. E, Patel Decl.). It had "rained hard" while Velez-Thomas was at the nail salon, but by the time she arrived at the post office the rain had reduced to a light drizzle. (Defs.' 56.1 Stmt. ¶ 5.) As she was walking into the post office, she slipped and fell in the vestibule. (Velez-Thomas Tr. at 14:13-24.) Velez-

Thomas was wearing flip flops the nail salon provided after her pedicure. (*Id.* at 18:19-22.) There were no signs in the post office vestibule indicating the floor was wet, nor were there any mats that would absorb water tracked in by customers. (*Id.* at 15:2-5.) When Velez-Thomas got back on her feet, she noticed her pants were wet and there was water on the floor. (*Id.* at 19:9-11, 17-18.) Her cousin asked her what happened and she responded, "I don't know." (*Id.* at 25:23-24.) When her cousin pointed to the water on the floor, she said, "[M]aybe that's what it was." (*Id.* at 25:25, 26:1-2.) Velez-Thomas then told the postal clerk and the postmaster about the incident. In a report prepared by post office employees dated September 1, 2017, she described injuries to her lower back and hip area after the fall. (*See* D.E. 36-2 at Ex. F.)

Neither the supervisor of customer service (Mary Jessup), the custodian (Joseph Furner), nor the postal clerk (Priti Patel) were aware of any water on the floor of the vestibule prior to Velez-Thomas's fall. (Jessup Decl. ¶ 7; Furner Decl. ¶ 5; Patel Decl. ¶ 3.) When Jessup learned about the fall, she noticed "a small amount of water" on the vestibule floor. (Jessup Decl. ¶ 3.) Furner examined the vestibule and noticed an amount of water "approximately the size of the opening to a coffee mug." (Furner Decl. ¶ 3.) He mopped up "and placed caution wet floor signage and cones." (*Id.*) Furner did not know how frequently the vestibule was checked for water and debris on the day Velez-Thomas fell, or if it was checked at all, but he noted that custodians typically perform checks, depending on weather conditions, "a minimum of two to three times a day," and the protocol is "for a custodian to mop up the rainwater and place wet floor caution signage." (*Id.* ¶¶ 6-8.) Jessup, Furner, and Patel were not made aware of any other incidents related to rainwater on that day. (Jessup Decl. ¶ 6; Furner Decl. ¶ 4; Patel Decl. ¶ 4.)

Velez-Thomas filed her complaint against the United States under the FTCA on February 22, 2019, alleging that negligence on the part of the United States was a direct and proximate cause

of her injuries. (*See* D.E. 1.) The United States answered on May 7, 2019, (D.E. 3) and Velez-Thomas was deposed on March 2, 2021. (*See generally* Velez-Thomas Tr.) After engaging in further discovery, the United States filed this motion for summary judgment, arguing that: (i) Velez-Thomas cannot establish a connection between her fall and a dangerous condition, and (ii) post office employees did not have actual or constructive notice of a dangerous condition. (D.E. 36-1, Mov. Br. at 5-10.) Velez-Thomas contends that there is sufficient evidence in the record for a trier of fact to find that rainwater on the floor of the vestibule was the proximate cause of her fall, and that the United States had constructive notice based on the weather conditions. (D.E. 37, Opp. Br. at 13-19.)

## III.   Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). In weighing the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The moving party has the burden of establishing the non-existence of a "genuine issue" for purposes of summary judgment. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If such a showing is made, it is the nonmoving party's burden to "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the nonmoving party "may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The court's role is not to examine the evidence and decide the truth of the matter, as credibility determinations are left to the fact finder. *Id.*; *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### IV.    Discussion

Under the FTCA, the United States is liable for its employees' negligence when they are acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1). "[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law." *Molzof v. U.S.*, 502 U.S. 301, 305 (1992) (internal citations omitted). Under New Jersey law, plaintiffs must establish four elements to sustain a negligence action: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (internal citations and quotations omitted). The relevant issues for purposes of this summary judgment motion are whether there is record evidence from which a reasonable juror can find that the United States breached a duty of care, and that this negligence was the proximate cause of Velez-Thomas's damages.

### a.   Duty of Care and Breach of Duty

"A business owner owes a duty of care to patrons invited onto the business's premises—a duty 'to take reasonable precautions to prevent the occurrence of foreseeable harm' to those patrons." *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344, 363 (2016) (quoting *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987)). This duty "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions

4

that would render the premises unsafe." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003). When an accident occurs due to a dangerous condition, invitees must show that the business owner "had actual or constructive knowledge of the dangerous condition that caused the accident." *Jeter v. Sam's Club*, 250 N.J. 240, 251 (2022) (citing *Prioleau v. Kty. Fried Chicken, Inc.*, 223 N.J. 245, 257 (2015)). Business owners have constructive notice when "the condition existed for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Id.* (internal citations and quotations omitted). The existence of a dangerous condition alone does not alone create constructive notice of it. *See id.*

In its reply brief, the United States claims that an unpublished appellate division opinion, *Ayala v. Roldan*, 2007 WL 219945 (App. Div. 2007) (per curiam), is instructive here. In *Ayala*, the court affirmed a grant of summary judgment to the defendant in a slip-and-fall case where the plaintiff fell on a landing above the entranceway to an apartment building. *Id.* at *1. The court found that there was no competent evidence to show that the defendant landlord had actual or constructive knowledge of the wet floor. *Id.* at *3. The plaintiff testified that there had been snowfall a few days before she fell, and that she believed the floor was slippery because of water tracked into the building throughout the day. *Id.* at *1. However, she did not present any evidence regarding the traffic patterns of the apartment building or the maintenance practices of the landlord that would allow a jury to find that the landlord had actual or constructive notice. *Id.*

The *Ayala* court found that the lack of evidence regarding traffic patterns in the area where the plaintiff fell was fatal to her claim because there was no way to determine how often the area was used for purposes of constructive notice; "[f]or example, if the building is populated mostly by working people, most of the foot traffic would be concentrated in the morning and evening hours. Under this circumstance, it may be perfectly reasonable for the caretaker of the building to

5

monitor the common entry only during the morning and evening hours." 2007 WL 219945 at *3. While this reasoning may make sense in the context of a slip and fall in an apartment building, it does not apply where a slip and fall occurs in a business premises open to the public. Velez-Thomas's testimony reflects that people had been walking in and out of the post office, and that the fall was "very embarrassing, because the post office was so full." (Velez-Thomas Tr. at 14:24-25, 25:18-19.) Moreover, on the day of the incident it had been, in defendant's own words, "raining hard" earlier and it was still lightly drizzling. (*Id.* at 15:24-25, 16:1-3.) This is sufficient evidence from which the factfinder could reasonably conclude that post office employees had constructive knowledge of a dangerous condition.

In another attempt to refute constructive notice, the United States further argues that, "[h]ad a custodian seen water on the vestibule floor, he or she would have mopped up the water and placed signage in the area to warn customers." (Mov. Br. at 9.) To support this argument, the United States cites custodian Furner's declaration, which states that post office custodians "always check the lobby and vestibule for water and debris…depending on the weather conditions, but a minimum of two to three times a day" and the protocol is "for a custodian to mop up the rainwater and place wet floor caution signage." (*Id.*; Furner Decl. ¶¶ 7-8.) However, there is no evidence in the record that shows that a custodian actually checked the vestibule for water that day. In fact, if Velez-Thomas's testimony that the floor was wet is believed, then the custodian's testimony suggests the vestibule was not checked and mopped, resulting in the dangerous condition. On the record evidence, then, the Court is satisfied that a rational trier of fact could find that the United States was on constructive notice of the vestibule becoming slippery due to the rain and therefore breached its duty to protect patrons by failing to clean up the water and place wet floor caution signage.

**b.  Proximate Cause**

To show that an alleged injury was proximately caused by a breach of duty, a plaintiff must establish "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Braboy v. U.S.*, 2018 WL 2002789, at *5 (D.N.J. April 30, 2018) (Simandle, J.) (quoting *Townsend v. Pierre*, 221 N.J. 36, 51 (N.J. 2015)) (internal quotations and further internal citation omitted). "While causation is an issue ordinarily determined by the factfinder, in the unusual setting in which no reasonable factfinder could find that the plaintiff has proven causation by a preponderance of the evidence, summary judgment may be granted." *Id.* at *6. (internal quotations and citations omitted).

The United States cites to *Osborn v. Walgreens Pharm.*, 2013 WL 5629165 (App. Div. 2013) (per curiam), an unpublished appellate division opinion, in arguing that Velez-Thomas's statements that she was unsure exactly why she fell prevented her from showing proximate cause. In *Osborn*, the plaintiff sued the defendant after she fell while getting out of her car in the parking lot of defendant's store on a rainy day. *Id.* at *1. However, when asked what caused the fall, the plaintiff only responded that she "wasn't sure what it was that [she] had fallen on or caused [her] to fall," and could not say where exactly in the parking lot she fell. *Id.* (internal quotations omitted). The lower court granted summary judgment in favor of the defendant, finding that the plaintiff failed to demonstrate any evidence that the defendant had constructive notice of a dangerous condition. *Id.* The appellate court affirmed this decision, noting that the plaintiff's lack of awareness of what caused her fall *in addition* to her inability to precisely describe where in the parking lot she fell was insufficient for a jury to conclude that the premises were not reasonably safe, and that defendant's negligence was the proximate cause of her fall. *Id.*

7

The circumstances of the *Osborn* plaintiff's fall are significantly different from the instant case. Rainy conditions do not necessarily make a parking lot slippery enough to warrant a business owner to act, which is why the specific location of a fall in a parking lot is crucial. Here, however, Velez-Thomas knows exactly where she fell – in the vestibule of the post office, an indoor area that patrons regularly walk through – raising a more apparent danger that the floor could get slippery under rainy conditions. Furthermore, it can be inferred from Velez-Thomas's testimony, where she states multiple times that the floor of the vestibule was wet, that the water on the floor of the vestibule was the proximate cause of her fall.

The United States also cites to another unpublished appellate division opinion, *Bailey v. E. Orange Gen. Hosp.*, 2014 N.J. Super. Unpub. LEXIS 1658 (App. Div. 2014) (per curiam), to support its argument that Velez-Thomas failed to show proximate cause. There, the plaintiff sued a hospital after he slipped and fell on an "unknown liquid substance" while walking down a hallway of the hospital. *Id.* at *1. (internal quotations omitted). In describing how he fell all the plaintiff said was, "I don't know what it was. I don't know if it was liquid. It could be wax. I don't know what it was. I can't tell you." *Id.* at *2. The appellate court affirmed the lower court's grant of summary judgment because the plaintiff "had no explanation for how that condition occurred or who was responsible." *Id.* at *5. "While plaintiff was not required to specifically identify the substance on the floor that allegedly caused his fall, he had an obligation to provide enough information to establish that defendant put the substance there or failed to clean it up." *Id.*

Again, this Court finds *Bailey* to be factually inapposite. Velez-Thomas repeatedly testified that there was water on the ground of the vestibule, and that her pants were wet after she fell. The respective plaintiffs in *Bailey* and *Osborne* provided no other evidence to show negligence beyond the fact of their falls. That is not the case here, where Velez-Thomas noted multiple times in her

testimony that the vestibule was wet under circumstances – lingering showers on a rainy day during which the rainfall was heavy – indicating that customers were tracking rainwater into the area. The Court, therefore, holds that Velez-Thomas has adduced sufficient evidence from which a reasonable jury could conclude, contrary to defendant's contentions, that there was a connection between her fall and a dangerous condition and post office employees had either actual or constructive notice of a dangerous condition. As such, the defendant's motion is denied.

## V.   Conclusion

For the foregoing reasons, the United States' motion for summary judgment (D.E. 36) is denied. An appropriate order will issue.


                                                        /s/ Katharine S. Hayden
Date: June 23, 2022                                     Katharine S. Hayden, U.S.D.J.